EDWIN GOODMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87799. Promulgated February 28, 1940.

*Louis Weinstein, C. P. A.*, for the petitioner.
*Harold F. Noneman, Esq.*, for the respondent.

OPINION.

MELLOTT: The respondent determined a deficiency in gift tax for the calendar year 1934 in the amount of $975.

This proceeding was submitted upon an agreed statement of facts, all of which we find to be as stipulated. For the purposes of this decision the following summary will suffice:

The petitioner, a resident of New York City, under date of December 21, 1934, entered into a trust indenture with certain trustees for

the benefit of his wife, son, and daughter. Pursuant to the provisions of this indenture, the petitioner transferred to the trustees 11 life insurance policies on his life, which were described therein. Under date of December 24, 1934, he executed a supplemental agreement with the same trustees and transferred to them 5 additional life insurance policies.

The presently agreed value of the policies when transferred to the trustees on the above dates was $178,247.97, and the value of the interest of each beneficiary in the transferred property exceeded $5,000. Petitioner paid a gift tax on such value, after taking exclusions of $15,000 and a specific exemption of $50,000.

The respondent in determining the deficiency disallowed the exclusions of $15,000. At the hearing he conceded that one exclusion of $5,000 should be allowed.

Under the terms of the trust indenture of December 21, 1934, as amended by the agreement of December 24, 1934, the petitioner made an absolute transfer to the trustees of 16 life insurance policies upon his life. The trust indenture provided that upon the death of the grantor the trustees were to collect the proceeds of the policies of insurance, hold the entire amount in trust, and divide it into four equal funds to be known as fund A, fund B, fund C, and fund D. The trustees were directed to invest and reinvest each of these funds and to make the following payments:

*Fund A.* To pay over the net income to the wife of the petitioner during her life and upon her death to pay over the principal to the petitioner's daughter, if living, but if not living then to the daughter's issue, if any, and if none, then to petitioner's son.

*Fund B.* To pay over the net income to the wife of the petitioner during her life and upon her death to pay over the principal to the petitioner's son, if living, but, if not living, then to the son's issue, if any, and if none, then to petitioner's daughter.

*Fund C.* To pay over the net income to petitioner's daughter during her life and upon her death to pay over the principal to her issue, if any, and if none, then to petitioner's son.

*Fund D.* To pay over the income to petitioner's son during his life and upon his death to pay over the principal to his issue, if any, and if none, then to petitioner's daughter.

The trust indenture authorized the trustees to borrow on the life insurance policies constituting the trust estate during the lifetime of the grantor and to lend the whole or any part of the amounts borrowed to the beneficiaries, in the event they were all living, in proportions of not more than one-half of the amount borrowed to petitioner's wife, not more than one-fourth to petitioner's daughter, and not more than one-fourth to petitioner's son. Proportionately larger loans could be made in the event of the death of one or more of the beneficiaries. After the death of the grantor the trustees were authorized to pay,

from time to time, out of the principal of funds A and B, not to exceed $250,000 to the wife, and out of funds C and D, respectively, not to exceed $75,000 each to the daughter and son. The trust was irrevocable and could not be altered, amended, or changed in any respect by the settlor.

Section 501 (a) of the Revenue Act of 1932 provides for the imposition of a tax "upon the transfer * * * by an individual * * * of property by gift", and subsection (b) provides that "The tax shall apply whether the transfer is in trust or otherwise * * *." Section 504 (b) of the same act reads as follows:

(b) GIFTS LESS THAN $5,000.—In the case of gifts (other than of future interests in property) made to any person by the donor during the calendar year, the first $5,000 of such gifts to such person shall not, for the purposes of subsection (a), be included in the total amount of gifts made during such year.

The deficiency notice states:

A review of the trust instrument discloses the fact that the children do not receive an immediate interest in the trust property but the gift to them is a future interest in property. Therefore, the exclusions are not allowed. It appears that the only payments that can be made to the children during the life of the grantor are in reality loans or advancements which may be borrowed from the trust as provided in part 4 of the trust instrument.

Apparently respondent's concession at the hearing was predicated upon the theory expressed by this Board in *Seymour H. Knox*, 36 B. T. A. 630; *Katherine S. Rheinstrom*, 37 B. T. A. 308; and *Edwin B. Cox*, 38 B. T. A. 865, all of which held that the trustee must be considered as the "person", or donee, within the purview of section 504 (b), *supra*. This is the only issue discussed upon brief, respondent citing the above cases and urging that the trust itself and not the beneficiaries be considered to be the "person" and, hence, that the number of exclusions be limited to one, as he concedes; and petitioner urging that the beneficiaries be construed to be the "persons" and he be given three exclusions.

We have recently held in *Wilton Rubinstein*, 41 B. T. A. 220, following the reversal of the Board in *Rheinstrom v. Commissioner*, 105 Fed. (2d) 642, by the Circuit Court of Appeals for the Eighth Circuit, and the reversal of an unreported memorandum opinion in *McBrier v. Commissioner*, 108 Fed. (2d) 967, that where one trust was created for the benefit of more than one individual, the number of exclusions under section 504 (b) must be determined by the number of beneficiaries under the trust. The question discussed by the parties upon brief must, therefore, be decided in favor of the petitioner.

The notice of deficiency, as pointed out above, states that all exclusions were denied because of the fact that the children did not receive an immediate interest in the trust property, the gift to them

being a future interest in property as such term is used in section 504 (b), *supra*. The petition alleges that the respondent erred in making such determination, paragraph 5 (f) stating that the transfers by the grantor "were transfers of his entire present interest in the said life insurance policies and therefore that the said transfers were gifts other than of future interests in property." This allegation is specifically denied by the respondent in his answer. We thus have an issue raised by the pleadings which probably should be determined irrespective of the concession by the respondent and regardless of the fact that it is not discussed upon brief.

The trust being irrevocable, it must be held that the donor divested himself of all his present interest in the policies. In the case of *Davidson* v. *Welch*, 22 Fed. Supp. 726, the District Court of Massachusetts discussed a case analogous to the present. The settlor had created an irrevocable trust conveying to it three life insurance policies having a then present surrender value of $37,740.05. The trust instrument provided that upon the death of the settlor the proceeds should be divided into equal shares, one for each of his seven children surviving him, the income of each share to be paid to the child for whom it was to be held for life, one-half of the principal, however, to be paid to the child when it should reach the age of 45, provided 10 years had elapsed after the death of the settlor. The court held that the interests transferred from the donor were present interests. It interpreted the instrument as giving effect to the donor's desire to make equal gifts to each of his seven children. It, therefore, concluded that the legal title to each one-seventh of the property conveyed vested in the children and that seven exclusions should be allowed under section 504 (b), *supra*. The Circuit Court of Appeals for the First Circuit adopted the same view, pointing out that the beneficiaries each had an equitable estate in the property constituting the trust and remarking "* * * that a gift, whether it is a direct one or an indirect one, through the instrumentality of a trust, is a transfer of property with donative intent." Substantially the same view was taken by the Circuit Court of Appeals for the Eighth Circuit in *Rheinstrom* v. *Commissioner*, *supra*, and in *Robertson* v. *Nee*, 105 Fed. (2d) 651, and by the Third Circuit in *McBrier* v. *Commissioner*, *supra*.

In *Charles W. Deeds*, 37 B. T. A. 293, the settlor conveyed by gift to trusts created for the benefit of his children certain shares of corporate stock. The beneficiaries were not entitled immediately either to the income or the corpus, the trustee being directed to collect the income and apply so much as in his sole discretion he should deem proper to the support, education, maintenance, and benefit of each child until the age of 30 should be attained. This, the Commissioner contended, made their interests "future interests in property." In

denying this contention it was pointed out that, notwithstanding the fact neither the property nor the income was as a matter of right immediately subject to the unqualified demands of the beneficiaries, still throughout the duration of the trust the beneficiaries had the sole beneficial interest in the property which "began immediately upon the creation of the trust without any beneficial interest intervening." It was therefore held that the beneficiary of each trust took a present interest in the property conveyed.

In the recent case of *Edith Pulitzer Moore*, 40 B. T. A. 1019, it was claimed that the settlor of the trust was entitled to four exclusions of $5,000 each, her husband being an income beneficiary for life, after which the corpus was to be divided, set aside, and retained by the trustee for the benefit of certain children during their lives. The amount set aside for each child was contingent upon the number of children living, the indenture providing that in the event of the death of three named sons, the whole of the trust should be paid in equal shares to such of the donor's other sons as should survive the donor's husband. It was held that each gift to a child under that trust instrument was of a future interest, since it was only to begin after the life of the husband had ended.

*Edith Pulitzer Moore, supra*, would probably be determinative of the issue before us if we were dealing only with funds A and B. It may be that petitioner's son and daughter had only future interests in and to the portion of the property comprising these funds, inasmuch as their respective interests were to begin only after the life of their mother ended; but as to fund C, however, the daughter had a present interest and the son had a similar interest in the property comprising fund D.

The reference in the deficiency notice to the fact that the only payments which could be made to the children during the life of the grantor were in reality loans or advancements which might be borrowed from the trust and the respondent's conclusion based thereon yet remain to be discussed. The provision contained in the trust instrument, while perhaps unusual, is readily understandable. It authorizes the trustees, within their discretion, "to borrow on the policies of life insurance" and "to lend * * * the amounts borrowed * * *" to the wife and children. The evident intention of the grantor was to provide for his wife and children both in the event of his death and during his lifetime. The instrument specifically provided, however, that, in the event the wife, daughter, and son were all living, not more than one-half of the amount borrowed by the trustees should be loaned to the wife and not more than one-fourth should be loaned to each of the children. It is apparent that the settlor was merely anticipating that it might become necessary, in

effect, "to cash in" or partially to reduce to cash some of his investment in life insurance policies. The provision authorizing the so-called borrowing and lending, we think, tends rather to support the petitioner's contention that the settlor had given his wife, son, and daughter vested interests in the policies. This is especially true when all of clause fourth of the trust instrument is considered. Thus it will be noted that in the event of the death of the wife and one of the children prior to the death of the grantor, the survivor might, if he chose, borrow the entire amount. During the lifetime of the wife, son, and daughter, they might, subject only to the discretion of the trustee, "borrow" the entire amount and thus terminate the trust. Applying the word "borrow" in the sense that the context indicates it was used, we think that the clause is tantamount to a general authorization that the trustee make available to the various beneficiaries such portion of the corpus of the trust as his sound discretion should dictate, subject only to the qualification that each of the beneficiaries be limited to his aliquot part of the property placed in trust. Under this interpretation of the clause the rationale of the *Charles W. Deeds* case, *supra*, is applicable. In other words, each of the beneficiaries has a present interest, not only in the income, which is to be paid to them later, but also in the corpus.

We hold that the respondent erred in denying the exclusions claimed. Reviewed by the Board.

*Judgment will be entered for the petitioner.*

---

OPPER, dissenting: I do not view these exclusions as permissible because they require a disregard of the plain words of Congress. If there were any remaining doubt that "future interests" describes any right or share in property which is not presently subject to the donee's use, that doubt would be resolved by unmistakable amplification in the reports [1] of Congressional Committees. See *McBrier* v. *Commissioner*, 108 Fed. (2d) 967. In order to attach some meaning to these words the prevailing opinion evidently assumes that they extend so far as a case where there is an intervening estate, but no farther. Cf. *Edith Pulitzer Moore*, 40 B. T. A. 1019. However, it seems apparent that there can be situations where the beneficiary's interest will be realizable "in possession or enjoyment" only on some "future date" without the specific intervention of an additional or intermediate present interest. See Judge Woodrough's dissenting opinion in *Rheinstrom* v. *Commissioner* (C. C. A., 9th Cir.), 105 Fed. (2d) 642.

---

[1] "The term 'future interests in property' refers to any interest or estate, whether vested or contingent, limited to commence in possession or enjoyment at a future date." 72 Cong., 1st sess., Sen. Rept. No. 665, p. 41; 72 Cong., 1st sess., H. Rept. No. 708, p. 29.

It seems to me this is such a case. For, under petitioner's disposition of his life insurance so that it was not convertible into cash during his lifetime, both the possession and enjoyment of the trust estate by these beneficiaries was necessarily postponed until the grantor's death, an occurrence which petitioner would presumably concede to be a byproduct of the future. Such a transfer presents at once the most persuasive instance of "gifts not reached, for one reason or another, by the estate tax",[2] and of an absence of the single designated ground for the exclusions.[3]

SMITH, STERNHAGEN, and HARRON agree with this dissent.

---

[2] Op. Cit., pp. 40 and 28.

[3] " * * * to fix the amount sufficiently large to cover in most cases wedding and Christmas gifts and occasional gifts of relatively small amounts." Op. cit.